UNITED STATES BANKRUPTCY COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE | NUMBER |
| **DAVID M. PITTS** | **02-13368** |
| DEBTOR | CHAPTER 7 |
| | |
| **ELLA CRAWFORD,** | ADV. NO. |
| **INDIVIDUALLY, AND AS AGENT FOR** | |
| **BENNETT CRAWFORD** | **03-1029** |
| PLAINTIFF | |
| V. | |
| **DAVID M. PITTS** | |
| DEFENDANT | |

## MEMORANDUM OPINION

Plaintiff Ella Crawford, individually and on behalf of her son, Bennett Crawford, hired debtor David Pitts to remodel a house for Mr. Crawford. After the debtor failed to complete the remodeling project, Mrs. Crawford successfully sued him for damages. She now asks this Court to declare her state court judgment against the debtor nondischargeable under 11 U.S.C. §523(a)(2)(A). Mrs. Crawford alleges that the obligation represented by the judgment arose from the debtor's false representations and fraud in the course of her dealings with him.

## FACTS[1]

Bennett Crawford, a disabled veteran, suffers from a nervous disorder. His elderly mother, Ella, helps to care for him.[2] Mrs. Crawford bought a house for her son, pursuant to a power of attorney executed in her favor.

Sometime before October 25, 1994, Mrs. Crawford and her daughter, Linda, met with the debtor to discuss hiring him to perform work at the house. Linda Crawford worked at Southern University and was familiar with the debtor, an assistant professor of vocational education at Southern and experienced building contractor. The debtor prepared a written contract to perform the renovation for $25,800. His attached "Remodeling Proposal" identified the specific components of the remodeling project, and itemized the price.[3] Mr. Pitts and Mrs. Crawford signed the contract, in the presence of Linda Crawford, on October 25, 1994.

Mr. Pitts received the first contract payment of $8,600 when he began work on or about October 25, 1994. He received the second payment of $8,600 on December 6, 1994, roughly the midpoint of the job. Although the final $8,600 payment was not due until the work was complete, the debtor asked Ella Crawford to make the last payment in January 1995, before he had finished the project. Mr. Pitts explained that he had run out of money and needed to buy more materials to complete the work. He told Mrs. Crawford that he would buy the supplies, store them at the house and finish the job. Mrs.

---

[1] The facts set forth in this opinion include facts drawn from the record of the state court proceedings admitted into evidence as part of Exhibit P1.

[2] At the time she began dealing with the debtor, Mrs. Crawford was 81 years old. At the time of trial, she was 90.

[3] The contract and its attachments were admitted into evidence as part of Exhibit P1. The work included adding two rooms totaling 18 feet by 30 feet, and remodeling a bathroom with new fixtures. These items figured prominently in the state court lawsuit against the debtor, which involved the parties' dispute regarding the terms of the contract and alleged changes to it. They are mentioned here only in that context.

Crawford gave the debtor the final $8,600 on January 23, 1995.  However, both Ella and Linda Crawford testified that he never brought the additional materials to the house and did not complete the work.  The debtor did not offer any testimony to contradict this.

After receiving the last payment, the debtor changed his telephone number and the Crawfords could not reach him.  An attorney hired by Mrs. Crawford ultimately did contact Pitts and, in December 1995, Linda Crawford and her brother David Crawford went to the debtor's home to ask that he complete the Crawford project.  Although the debtor promised he would return to the job, he never did.

The debtor proposed several reasons for failing to complete the work Mrs. Crawford hired him to do.  First, he said that he did not give Mrs. Crawford a definite date by which he would complete the project.  Second, he maintained the Crawfords would not let an electrician into the house to complete the electrical work for the project, which kept the debtor from completing other work.  Neither of these claims was corroborated.  Third, the debtor said that he received a letter from Southern University in February 1996 instructing him not to do contracting work, because he was supposed to be on a rest and recuperation sabbatical at the time.[4]

On April 11, 1996, Mrs. Crawford sued Mr. Pitts in the 19th Judicial District Court for East Baton Rouge Parish and, on July 7, 1998, the state court rendered judgment against the debtor for $10,984, plus interest.  The relevant parts of the record of the state court proceedings were admitted into evidence at the trial.  The state district court held that Mr. Pitts breached his contract with Mrs. Crawford.

On appeal, Ella Crawford urged the Louisiana First Circuit Court of Appeals to hold that the district court erred in not finding that the debtor violated the Louisiana

---

[4]  The letter itself was not offered into evidence.

3

Unfair Trade Practices Law (UTPL), La. Rev. Stat. 51:1401 *et seq.* After reviewing the district court record, the First Circuit concluded in its March 31, 2000 judgment that the lower court could have based its award of damages on a UTPL violation, as well as breach of contract and general negligence. The appellate court reasoned that the debtor's actions were unethical and unscrupulous, and constituted unfair and deceptive trade practices. Based on its conclusion that the UTPL applied, the appeals court awarded Mrs. Crawford attorney's fees of $2,500 in addition to the damages awarded by the district court.[5]

This Court found no indication in the records of the state trial or appellate courts that either court had found that Mr. Pitts had committed fraud or fraudulent misrepresentation.

## ANALYSIS

Ella Crawford relies on 11 U.S.C. §523(a)(2)(A) as the sole basis for the nondischargeability of the debtor's obligation to her. The Fifth Circuit has set forth different standards for proving nondischargeability under section 523(a)(2)(A) depending on whether the claim is based on alleged false pretenses or representations, or actual fraud. To prove nondischargeability on the basis of false pretenses or representations, the objecting party must establish: "(1) a knowing and fraudulent falsehood; (2) describing past or current facts; (3) that was relied upon by the other party." *RecoverEdge, L.P. v. Pentecost*, 44 F.3d 1284, 1293 (5th Cir. 1995). An allegation of actual fraud requires in addition proof of the debtor's intent to deceive, and proof of proximate loss to the creditor

---

[5] La. Rev. Stat. 51:1409 authorizes an award of attorney fees to a party suffering a loss as a result of conduct subject to the UTPL.

4

as a result of the alleged fraud. *Id*. Mrs. Crawford appears to base her claim on both alleged false representations and actual fraud.

At trial the Court raised the issue whether the doctrine of issue preclusion applies in this adversary proceeding. The Court concludes that is not required to give preclusive effect to the state district court judgment, as the First Circuit amended it.[6] Under La. Rev. Stat. 13:4231, the res judicata effect of a prior judgment on the merits "precludes the parties from relitigating matters that were or could have been raised in that action." *Mandalay Oil & Gas, L.L.C. v. Energy Development Corp.*, 2002 WL 1434422 (La. App. 1st Cir.), 2001-0993 (7/3/02). The state district court's reasons for judgment do not specify the legal theory for recovery, or specifically find that Mr. Pitts committed any misrepresentation or fraud. Moreover, they contain no finding whatsoever regarding any unfair trade practices. Finally, nothing in the state trial court's reasons suggests that Mr. Pitts's alleged fraud or misrepresentations were even raised at trial.

On appeal to the First Circuit, Mrs. Crawford urged that the debtor had violated the UTPL. The First Circuit noted in its opinion that under Louisiana law, an unfair or deceptive trade practice "offends established public policy and . . . is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Ella Crawford v. David Pitts*, No. 99 CA 0419, slip opinion at 11 (La. App. 1st Cir. March 31, 2000), citing *Crown Buick, Inc. v. Bercier*, 483 So.2d 1310, 1311-12 (La. App. 4th Cir. 1986). The court went on to find only that Mr. Pitts's actions in handling the Crawford project offended public policy, were unethical and were probably unscrupulous. The appeals

---

[6] "It is now settled that a federal court must give to a state court judgment the same preclusive effect as would be given that judgment under the law of the state in which the judgment was rendered." *Migra v. Warren City School District Board of Education*, 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984).

5

court concluded that the trial court could have based its award on a UTPL violation, even though it made no further findings concerning the debtor's conduct.

Because the specific issue of whether the debtor knowingly engaged in fraud or false representations was not raised or decided by either the 19th Judicial District Court or the First Circuit, nondischargeability of the debt must be determined solely based on the evidence presented in this Court.

Debts falling within section 523(a)(2)(A) are those obtained by frauds "involving moral turpitude or intentional wrong, and any misrepresentations must be knowingly and fraudulently made." *In re Martin*, 963 F.2d 809, 813 (5th Cir. 1992), citing *In re Foreman*, 906 F.2d 123, 127 (5th Cir. 1990). The fraud required to bring an obligation within the scope of the statute may be based on any conduct calculated to convey a misleading impression. Thus, a misrepresentation may be either express or implied. *In re Wyant*, 236 B.R. 684, 695 (Bankr. D. Minn. 1999). The evidence confirms that Mr. Pitts misled Mrs. Crawford. Despite the debtor's protests to the contrary, there is no credible evidence that Mr. Pitts ever intended to return to the Crawford house after he pledged to do so to obtain the January 1995 payment. His contentions that he and Mrs. Crawford did not agree on a specific frame for completing the work, and that he could not return to work after his employer instructed him not to undertake any more contracting work (a letter he received more than one year after taking Mrs. Crawford's last payment) simply are not credible.

The evidence supports a finding that Mrs. Crawford relied on the debtor's fraudulent misrepresentations. Bankruptcy Code section 523(a)(2)(A) requires that a creditor justifiably rely on the debtor's representations. *Field v. Mans* 516 U.S. 59, 74-5,

6

116 S.Ct. 437, 133 L.Ed.2d 351 (1995). Justifiable reliance is gauged by "the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case," rather than a community standard of conduct. *In re Mercer*, 246 F.3d 391, 418 (5th Cir. 2001). The plaintiff was 81 or 82 years old at the time of the contract, and lacked any sophistication in business dealings or home construction. She dealt with a younger man, who was a university professor with thirty-one years of experience in the contracting business. Mrs. Crawford's only other "advisor" was her daughter. Mrs. Crawford justifiably relied on the debtor's representations that he would return and complete the project.

Finally, §523(a)(2)(A) requires that the complaining creditor have sustained losses as a proximate result of the debtor's false representations. Ella Crawford was directly injured as a result of Mr. Pitts's misrepresentations regarding his intentions to complete the job after receiving the last $8,600 payment. The debtor never finished the job, and Mrs. Crawford never received anything in exchange for her final payment.

Unfortunately, Mrs. Crawford is not entitled to relief for amounts exceeding the final $8,600 payment. The plaintiff proved no basis for declaring the additional damages awarded by the First Circuit to be nondischargeable.

7

## CONCLUSION

The $8,600 paid by Ella Crawford to David Pitts on January 23, 1995 is a nondischargeable debt under 11 U.S.C. §523(a)(2)(A).

Baton Rouge, Louisiana, January 27, 2004.

**s/ Douglas D. Dodd**
DOUGLAS D. DODD
UNITED STATES BANKRUPTCY JUDGE